out difficulty; but, having reached a conclusion for ourselves, we have thought it our duty to state our opinion.

We think that section 1, clause *(c)*, of the Act of 1919, which provides, "That a tax shall be and is hereby imposed upon the transfer of any property, real or personal, or of any interest therein, or income therefrom, in trust or otherwise, to persons or corporations in the following cases: . . . *(c)* . . . by deed, grant, bargain, sale or gift, . . . intended to take effect in possession or enjoyment at or after the death of the grantor, vendor or donor," imposes a tax upon property, real or personal, held by a trustee, even where the trust began before the Act of June 20, 1919, P. L. 521, where a transfer to the remainderman is required after the death of the settlor.

NOTE.—See Dick's Estate, 30 Dist. R. 839; Davis's Trust Estate, 1 D. & C. 303.

---

## Price's Estate.

*Wills—Construction—Vested and contingent remainders—Termination of trust—Impossibility of issue.*

Where a fund is bequeathed in trust for testator's daughter for life, under separate-use provisions which have terminated through a divorce, and the will provides that upon her death, leaving issue her surviving, the income is to be paid for the maintenance of such issue until they arrive at twenty-five years, and at twenty-five a proportionate share of the principal is to be paid them, the daughter may not have the trust terminated on the death of all her children, unmarried and without issue, although she is sixty-five years of age and, according to medical testimony, is incapable of bearing children, and there is no gift over in the event of her dying without issue her surviving, as the remainders are contingent upon the remaindermen's answering the description of issue surviving at her death.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1896, No. 473.

Thomas W. Price, the testator, died March 6, 1895, leaving a will duly admitted to probate, which contained, *inter alia,* the following clause:

"I give and bequeath to my executors hereinafter named the sum of fifty thousand dollars in trust to invest and keep the same invested in good interest paying securities, well secured first mortgages of real estate to be preferred when obtainable, to collect and receive the interest and income therefrom and pay the same over to my daughter, Mary S. Claggett, in equal quarterly payments, during all the period of her natural life, for her own sole and separate use and behoof, and upon her decease leaving issue her surviving, then the said income to be applied and paid for the maintenance of such issue until they shall respectively arrive at the age of twenty-five years, in equal quarterly payments, the payments to be made to said issue personally after they shall respectively arrive at the age of twenty-one years; and upon the further trust, as each of said issue shall arrive at the age of twenty-five years, to pay over to him or her a proportionate part or share of the said sum of Fifty thousand Dollars, each part or share to be ascertained by an equal division of the whole to and among the children of my said daughter, Mary S. Claggett."

The will further contained a number of general legacies and a residuary clause.

Mary S. Claggett was divorced from her husband, Jesse C. Claggett, on Oct. 15, 1900, and afterwards married L. S. Kemper. By her first marriage she had issue, Jesse C. Claggett, Jr., born in 1883, died July 25, 1905, and Thomas F. Claggett, born in 1886, died Oct. 30, 1911. Both sons died unmarried and without issue. The testator's estate was insufficient to pay the pecuniary legacies in full and there was an abatement of about 50 per cent.

She was sixty-five years old when she presented this petition at the audit to terminate the trust. The application was opposed by the trustee and also by certain general legatees, who contended that they had standing to resist it, because, if she failed therein, a part of her share would at her death become applicable to the general purposes of the will, and as there had been a deficiency of assets so that the legacies were not paid in full, they, as general legatees, would be entitled to take in preference to the residuary legatees.

Gest, J., the auditing judge, said in his adjudication:

"This account is filed at the instance of Mary S. Kemper, who claims that the trust can now be terminated and the principal be paid over to her. In support of her application there was produced to the court a certificate of George A. Cameron, M. D., in the form of a letter to Messrs. Graham & Gilfillan, dated June 5, 1922, stating his professional opinion that from his past observation and physical examination of Mrs. Kemper, there is no possibility of her having any more children. A similar application was made to this court by Mary S. Kemper in 1908, when she was fifty years of age, and at that time her son, Thomas F. Claggett, was living and assigned to her his remainder interest. This petition was refused by the court in an opinion by Anderson, J., Price's Estate, 17 Dist. R. 534, and counsel for the other parties, claiming adversely, argued that this decree was *res judicata*. This is not necessarily so. In 1908, Mrs. Kemper was only fifty years of age, and the possibility of her bearing children was much greater than it is now. She has attained the age of sixty-five years, and cases of a woman bearing a child at that age are so extremely few that we frequently terminate trusts where that is the only question involved. And in 1908, Thomas F. Claggett, son of Mrs. Kemper, was living, so that the case was presented to the court at that time in different circumstances from those now existing. It may here be noted that the separate-use trust terminated on the divorce of Mary S. Claggett from her then husband, and the language of the will is not sufficient to impose a trust against alienation: Kunkel *v.* Kemper, 32 Pa. Superior Ct. 360.

"The argument now presented is briefly this, that the interests of her children above mentioned were vested remainders, and as they have died, as stated, she has inherited from them their respective interests, and as by reason of her age and physical condition she is incapable of bearing other children, she is now the sole party having any interest, and, therefore, entitled to terminate the trust and receive the *corpus*. Rau's Estate, 254 Pa. 464, was relied upon, but in that case the remainder, after the death of the testator's daughter, was to all and every the child and children of my said daughter and the legal issue of any of them deceased, while here the remainder is, upon the decease of Mary S. Kemper leaving issue her surviving, then the income to be paid to such issue until they arrive at the age of twenty-five, when the principal is to be paid to them. It would be very easy to prolong this adjudication by a review of the almost innumerable cases decided on the question of vested and contingent legacies, but it does not seem necessary to do more than refer to Mulliken *v.* Earnshaw, 209 Pa. 226; Raleigh's Estate, 206 Pa. 451; Rudy's Estate, 185 Pa. 359, which were cited on this very point by Anderson, J., in his opinion in Price's Estate, 17 Dist. R. 534, and the more recent cases of Towne's Estate, 260 Pa. 443; Evans's Estate, 264 Pa. 357; Bennett's Estate, 270 Pa. 397, and our own decision in Given's Estate, 29 Dist. R. 202.

"It, therefore, follows that the application of Mary S. Kemper to terminate the trust must be refused and the estate will be awarded to the accountant in trust for Mrs. Kemper for life. The question of who will be entitled at her decease to the principal need not and cannot now be determined: Hano's

2 D. & C.

Estate, 8 Dist. R. 353; Wears's Estate, 25 Dist. R. 30; Glanding's Estate, 15 Dist. R. 985.

"Counsel for Charles P. Price and the children of Mrs. Switzer claim that the fund will then be applicable to make up the deficiency in the other pecuniary legacies caused by their abatement, and Costello's Estate, 16 Dist. R. 188, and Wootten's Estate, 21 Dist. R. 1035, were cited, to which might be added Haines's Estate, 25 Dist. R. 994, with which compare the opinion rendered in this court on the question of the destination of the void accumulations, Price's Estate, 23 Dist. R. 169. Of course, the costs of filing the account, etc., including Mr. McAleer's fee of $300, must be charged to income."

*Graham & Gilfillan*, for exceptant.

*Joseph L. McAleer* and *Albert B. Weimer*, contra.

PER CURIAM, Oct. 20, 1922.—The remainders are plainly and clearly contingent, and, hence, the trust continues to protect them. The adjudication of Judge Gest is unanswerable. The exceptions are dismissed and the adjudication is confirmed absolutely.

---

## Luzerne County Liquor Licenses.

*Liquor law—Licenses—18th Amendment—Constitutionality of Act of May 5, 1921 (Woner Act)—Title of statute—Amendment—Art. iii, sects. 3 and 6, of Constitution.*

1. The Woner Act of May 5, 1921, P. L. 407, does not violate section 3, art. iii, of the Constitution, by failing to express in the title the amendments of the Acts of April 24, 1901, P. L. 102, and Feb. 26, 1919, P. L. 10, as provided in sections 3 and 5 of the act, since the title plainly expresses the amendment of the Act of May 13, 1887, P. L. 108, necessarily embracing all intermediate amendments which had become therein incorporated.

2. Nor does the Woner Act violate section 6, art. iii, of the Constitution, in undertaking in section 1 to incorporate the congressional definition of intoxicating liquors by reference to the title only and not by re-enactment at length.

3. The Woner Act does not incorporate by reference to the title, but only by reference to subject.

4. The State legislature has no power to re-enact what Congress within its exclusive power has enacted, and, therefore, the State constitution should not be construed as requiring an impossible thing.

5. The courts in Pennsylvania have the power to grant liquor licenses under the Brooks Act of May 13, 1887, as amended by the Woner Act of May 5, 1921, for non-intoxicating beverages as defined by the Act of Congress.

In re granting of liquor licenses. Q. S. Luzerne Co.

FULLER, P. J., March, 1922.—Notwithstanding the clear, comprehensive and temperate argument of counsel, unmarred by any indulgence in lofty ethical sentiment and maintaining throughout the calmness of purely legal discussion, we are not convinced that the court lacks power to grant licenses on the proposition that the Woner Act of 1921, P. L. 407, is unconstitutional and the Brooks Act of 1887, P. L. 108, is repealed.

### I.

The Woner Act of 1921 is claimed to be unconstitutional because (1) the title violates section 3, art. III, of the State Constitution, by failing to express the amendment of the Act of April 24, 1901, P. L. 102, and of the Act of Feb. 26, 1919, P. L. 10, as provided in sections 3 and 5 of the act under consideration; (2) the act violates section 6, art. III, of the Constitution, in